UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FRANK PEREZ, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18 CV 295 |
| | ) |
| LAKE COUNTY SHERIFF'S | ) |
| DEPARTMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on the motion of defendants Dr. William Forgey and Correctional Health Indiana, Inc., for summary judgment. (DE # 106.) Due to this procedural posture, the facts are recited in a light most favorable to plaintiff. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). Further, wherever possible, the facts are recited based upon the parties' largely uncontested statements of material facts. (DE ## 108, 121.)

I.   **BACKGROUND**

In July of 2016, plaintiff Frank Perez, Jr., was a federal prisoner convicted of racketeering charges. At the time, he was being held at the Lake County Jail pending further disposition by the Bureau of Prisons. Defendant Dr. William Forgey was president and chief executive officer of defendant Correctional Health Indiana, Inc., which provides health care to inmates at the Lake County Jail. Nurse practitioners and nursing staff rendered health care to inmates under Dr. Forgey's medical supervision.

At around 10:00 p.m. on July 20, 2016, Nurse Willie Walker responded to an urgent call that plaintiff's left hand had been caught in a cell door and that he had been experiencing pain since just before 6:00 p.m. that evening. Dr. Forgey was notified and Nurse Walker administered Naproxen to be given twice daily for seven days and wrapped plaintiff's left hand in an Ace bandage. An x-ray of the left hand was also ordered.

On July 21, plaintiff's hand was x-rayed in two views. A fracture of the left ring finger was identified, along with soft tissue swelling. The x-ray report denoted a non-displaced fracture of the fourth metacarpal bone. Nurse Katherine Back planned to refer plaintiff to an outside orthopedic surgeon for further work-up.

On July 22, Correctional Health's scheduler, Mary Novak, communicated to the U.S. Marshals Service a request to approve plaintiff's referral to Dr. Judson Wood, an outside orthopedic surgeon, for evaluation on July 25, the first available date Dr. Wood's office could provide. The orthopedic appointment was approved by the Marshals Service. Between July 22 and July 25, plaintiff received Naproxen twice daily for pain management and continued to wear the Ace wrap on his left hand for support.

On July 25, plaintiff was seen by Dr. Wood. Dr. Wood examined the finger fracture, placed plaintiff's left hand in a wrist-forearm brace, and recommended surgery. Dr. Wood noted "obvious deformity with associated tenderness" and found that the x-ray revealed a "displaced midshaft transverse fracture of the left fourth metacarpal." (Def. Ex. E at 48-49.) Dr. Wood recommended that plaintiff "undergo

2

closed reduction and intramedullary pin fixation of the fourth metacarpal fracture." (*Id.*) Upon return to the Lake County Jail, plaintiff continued on Naproxen for pain.

On July 26, Correctional Health personnel faxed a request to Dr. Wood to send his report and findings to Dr. Forgey at the Lake County Jail. The same day, plaintiff declined the Naproxen offered him by Correctional Health Medical Assistant Tamika Owens. On July 27, plaintiff continued to refuse to take the Naproxen offered to him, stating that he no longer wanted it.

On August 1, plaintiff was seen and evaluated by Nurse Practitioner Lynn Pampalone. Plaintiff advised her that Dr. Wood had recommended surgery; however, Correctional Health providers had not yet received Dr. Wood's plan of care. Nurse Practitioner Pampalone noted that plaintiff was in good condition and that further clinical care depended on Dr. Wood's consultation orders. Because plaintiff complained of some pain, she administered ibuprofen, 600 mg., and confirmed with him that he knew how to contact the medical staff if needed. Plaintiff thereafter received ibuprofen, 600 mg., twice daily on August 2, August 3, and August 4. He also continued to wear the left wrist forearm brace placed by Dr. Wood.

Either on or shortly before August 5, Dr. Wood's office scheduled plaintiff for surgery on August 10. Also on or about August 5, Novak contacted the U.S. Marshals Service to gain approval for plaintiff to undergo surgery on August 10 at Southlake Methodist Hospital. That request was approved by the Marshals Service on August 8. Between August 5 and August 8, plaintiff continued to receive ibuprofen, 600 mg.,

3

twice daily, except that it was withheld on August 9 pending plaintiff's surgery on August 10.

Because of plaintiff's scheduled surgery, Nurse Practitioner Back labeled plaintiff "NPO," a classification which designated he was not to have food or drink prior to surgery. Novak notified Correctional Health's surgery liaison, Amber O'Rourke, of the NPO order, who in turn put an "NPO" sign on the door of plaintiff's infirmary room and wrote an NPO message on the dry erase board next to the door. Nonetheless, plaintiff was provided with a breakfast tray and ate breakfast on the morning of August 10. Plaintiff claims he was never told that he should not have anything to eat before the scheduled surgery.

After plaintiff was transported to the hospital by correctional officers that morning for surgery and hospital staff were made aware that he had eaten breakfast, the surgery was put on hold due to anesthetic risk. Plaintiff claims it was recommended that the surgery be delayed until 1:00 p.m., but a female transport officer refused to wait. Plaintiff was returned to the Lake County Jail, where Correctional Health staff administered ibuprofen, 600 mg., that evening; and he continued to receive ibuprofen on August 11, August 12, August 13, August 14, and August 15.

A second surgery appointment was scheduled for August 16. Accordingly, on August 15, Nurse Practitioner Back issued another NPO order. On the morning of August 16, plaintiff was again transported to the Southlake Methodist Hospital for surgery. Dr. Wood performed an open reduction and internal fixation of the closed

4

fracture of plaintiff's finger, with pin fixation. This was a departure from the original plan, which was to perform a closed reduction and intramedullary pin fixation. When a closed reduction is performed, "the bones are put back into position without using surgery. The finger is then splinted." (Def. Ex. E at 54.) Dr. Wood noted that he ultimately chose to perform an open reduction instead, "being that the fracture is nearly 3-4 weeks old." (Def. Ex. C at 8.) Dr. Wood further commented that the fracture had already healed and malunion had occurred. (*Id.*) The total span of time between the injury and surgery was 27 days.

Following surgery, plaintiff returned periodically to Dr. Wood for further orthopedic care. Plaintiff admitted that, post-surgery, he continued to do push-ups against medical advice, and he also took his hand out of his cast/splint. On March 17, 2017, Dr. Wood removed the pin from the fracture site without complications. On May 1, 2017, Dr. Wood removed the cast from plaintiff's left hand. The surgical wounds were well healed and plaintiff's ring finger was in good alignment, with intact neurovascular function. At that time Dr. Wood discharged plaintiff from his care.

Dr. Jonathan J. Paley, a board-certified orthopedic surgeon, reviewed the Lake County Jail medical records from July 20, 2016, through May 1, 2017, pertaining to plaintiff's injury, as well as the medical records from Methodist Hospital Medical Group produced by Dr. Wood, medical records and imaging studies from Methodist Hospital, x-ray reports and imaging studies from the Lake County Jail, the "NPO" order of August 9, 2016, for the surgery scheduled for August 10, 2016, and post-surgery still

5

photos of plaintiff doing push-ups in his cell. (Def. Ex. H ¶ 3.) Based upon his review of the information and his surgical background and medical training, it is the uncontested opinion of Dr. Paley that:

> (a) plaintiff had significant and impressive access to the jail infirmary, including medical management;
>
> (b) plaintiff's request for consultations, and his receipt of imaging studies and medications were timely provided in a reasonable manner and well beyond what a patient in the private setting could typically expect;
>
> (c) plaintiff received appropriate, timely and reasonable pre-surgical and surgical care for his metacarpal fracture that was commensurate with the standard of care, including reasonable and appropriate medication for pain control;
>
> (d) the pre-operative and post-operative management of plaintiff's medications by Correctional Health Indiana staff was appropriate and reasonable under the circumstances, including as to pain control;
>
> (e) plaintiff was non-compliant post-operatively with the orders administered by both his orthopedic surgeon, Dr. Wood, and by the Correctional Health Indiana medical staff at the Lake County Jail, as evidenced by their repeated, documented recommendations to avoid post-surgical exercise using his recently operated-on left hand and his decision not to wear his postoperative brace against medical advice; and
>
> (f) plaintiff's performance of push-ups with his legs in an elevated

6

position without his brace placed excessive loading pressure on a surgical extremity, demonstrating that the medication given him by Correctional Health staff was sufficiently controlling his post-operative pain. (Def. Ex. H.) Plaintiff did not attack or contest the substance of Dr. Paley's expert opinion, nor Dr. Paley's credentials or qualifications. No competing expert opinion has been provided by plaintiff.

In 2018, plaintiff filed the present lawsuit, alleging that defendants Dr. Forgey and Correctional Health Indiana, Inc. (amongst others), violated his rights under the Eighth and Fourteenth Amendments of the Constitution and committed medical malpractice in violation of the laws of the State of Indiana. Plaintiff listed multiple "unknown" employees of Correctional Health Indiana, Inc., as defendants. (DE # 2.) However, when plaintiff sought to name the unknown defendants via an amended complaint, Magistrate Judge John E. Martin properly denied the motion given plaintiff's lack of diligence, noting that plaintiff had three-and-a-half years to name the unknown defendants, but did not do so. (DE # 101.)

Defendants Dr. Forgey and Correctional Health Indiana, Inc., have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DE # 106.) Plaintiff has responded (DE # 120), and defendants have replied (DE # 122).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows for the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an

7

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable

fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC,* 45 F.3d at 234.

### III. DISCUSSION

Plaintiff has articulated four different claims against defendants: (A) a claim under the Fourteenth Amendment; (B) a claim under the Eighth Amendment; (C) a pattern or practice claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978); and (D) a state law medical malpractice/negligence claim. Each type of claim is addressed below, followed by a brief discussion of the claims against the "unknown" employees of Correctional Health Indiana, Inc.

### A. Fourteenth Amendment Claim

Title 42 U.S.C. Section 1983 is the legal mechanism plaintiff employs to seek recovery in the present lawsuit for violations of his constitutional rights. *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir. 1997) (Section 1983 is not a source of substantive rights itself, but an instrument through which other rights can be vindicated). Plaintiff first claims defendants violated his rights under the Fourteenth Amendment, which protects against deprivations of life, liberty, and property without due process of law. *Knight v. Grossman,* 942 F.3d 336, 341 (7th Cir. 2019). Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to "shock the conscience." *Id.* at 343; *County of Sacramento v. Lewis,* 523 U.S. 833, 848–49 (1998); *McDowell v. Vill. of Lansing,* 763 F.3d 762, 766 (7th Cir. 2014).

9

In this case, plaintiff attempts to save his Fourteenth Amendment claim from summary judgment by succinctly arguing that a reasonable jury could find that a 27-day gap between injury and surgery "shocks the conscience." (DE # 120 at 5.) The court finds that no reasonable juror could agree with plaintiff, however. In this case, plaintiff's broken finger was assessed and x-rayed within one day of his injury. The day after that, defendant's scheduler requested approval for plaintiff's referral to Dr. Wood, an outside orthopedic surgeon. These delays are minimal in light of the nature of plaintiff's injury and the treatment anticipated. It is undisputed that Dr. Wood's office did not schedule surgery for the next 19 days, but no facts indicate that defendants played any role in this delay.

On the morning of plaintiff's first scheduled surgery appointment, plaintiff was given breakfast in the infirmary despite the fact that two signs were posted near his room's door indicating he should not eat that morning. It is unclear who plaintiff attempts to hold liable for this error.[1] However, to the extent that he alleges that it was

---

[1] It is not clear whether plaintiff seeks to hold an employee of Correctional Health Indiana, Inc., liable for the improper delivery of the breakfast tray. Even if the court assumes plaintiff *does,* the court could grant summary judgment on the claim for failure to name the individual allegedly responsible. This is because defendant Correctional Health Indiana, Inc., cannot be held vicariously liable for its employees' errors, nor can Dr. Forgey be responsible for failing to ensure subordinates carry out their tasks correctly. *Horshaw v. Casper,* 910 F.3d 1027, 1029 (7th Cir. 2018). It is therefore incumbent upon plaintiff to name specific individual defendants (rather than "unknown" defendants) within the appropriate time period, which Magistrate Judge Martin held plaintiff failed to do despite having ample time. (DE # 101.) Accordingly, if an employee of Correctional Health Indiana, Inc., is ultimately responsible for the breakfast tray, he or she is not named as a defendant in this case and no liability may attach to that individual. Nonetheless, the court grants plaintiff the benefit of the doubt for purposes of this opinion, only, because even if the proper defendant were named in this case, the claim fails.

an error on the part of defendants, it caused at most a six-day delay until Dr. Wood could schedule a second surgery appointment.

Further, assuming the breakfast tray was improperly given, and assuming it was the fault of defendants, plaintiff has pointed to no evidence suggesting that the action was anything more than a mistake. At most, the error could be construed as negligence, and the Seventh Circuit has made very clear that "[n]either negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Knight,* 942 F.3d at 342.

The present circumstances are particularly unshocking because, as plaintiff does not dispute, he appears to have made a full recovery after the second scheduled surgery, despite his failure to follow his doctor's instruction to refrain from doing pushups and removing protective gear. A delay of six days for surgery on a broken finger which resulted in a full recovery does not shock the conscience. As the Seventh Circuit has explained, the constitution "requires reasonableness, not immediacy." *Pulera v. Sarzant,* 966 F.3d 540, 555 (7th Cir. 2020). While it is possible that the process could have gone six days more swiftly in this case, "the Constitution does not demand perfection." *Id.; see also Harris v. Arizona Indep. Redistricting Comm'n,* 578 U.S. 253, 258 (2016) ("The Constitution . . . does not demand mathematical perfection."). Summary judgment is appropriate on defendant's Fourteenth Amendment claim.

### B. Eighth Amendment Claim

Plaintiff also attempts to recover against defendants via Section 1983 for violating his Eighth Amendment rights. The Eighth Amendment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Officials violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle,* 429 U.S. at 104. Accordingly, a claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *See Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006); *see also Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011).

The parties do not dispute that plaintiff suffered from a serious medical condition, so the court's focus is on whether defendants acted with deliberate indifference. Deliberate indifference is a subjective standard. *Johnson,* 444 F.3d at 585. To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. *Id.* A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe,* 631 F.3d at 857. Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998). The Seventh Circuit has described the applicable culpability standard as "akin to criminal

12

recklessness." *Thomas v. Blackard,* 2 F.4th 716, 722 (7th Cir. 2021). Notably, "[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008).

A prison official must have actual, and not merely constructive, knowledge of the risk in order to be held liable under the deliberate indifference standard; specifically, he or she must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). However, although this inquiry focuses on an official's subjective knowledge, a prisoner need not present direct evidence of the official's state of mind. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. *Gevas v. McLaughlin,* 798 F.3d 475, 480 (7th Cir. 2015).

Here, plaintiff points to no actual evidence of deliberate indifference. Rather, he insists that the 27-day time period between plaintiff's injury and plaintiff's surgery speaks for itself. However, the court is only required to make reasonable inferences from the evidence, not unreasonable ones. *Bank Leumi Le-Israel, B.M., v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991). In this instance, plaintiff, who suffered from a broken finger, was provided with same-day care by prison medical staff, an x-ray the following day, and a referral to an outside surgeon the day after that. No reasonable juror would infer deliberate indifference from these events. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir.

13

1997) (prisoners are not entitled to "the best care possible," but rather "reasonable measures to meet a substantial risk of serious harm"). Further, there is no evidence from which a fact-finder could infer that the next 19 days of delay could be attributed to defendants.

It is possible that the facts, when taken in a light most favorable to plaintiff, could show that an error was committed when plaintiff was provided with a breakfast tray on the day of his first scheduled surgery, thus arguably causing a six-day delay until his second scheduled surgery.[2] However, a mistake does not an Eighth Amendment violation make. *Stockton v. Milwaukee Cnty.,* 44 F.4th 605, 616 (7th Cir. 2022) ("Mistakes in medical judgment, even negligence, are insufficient to support deliberate indifference."). In this case, there is no evidence supporting an inference that this action exceeded negligence and approached intentional wrongdoing, *see Collignon,* 163 F.3d at 988, or criminal recklessness, *Thomas,* 2 F.4th at 722, nor can any culpable state of mind be inferred from the nature of the act itself or any other circumstantial evidence in the case, *Gevas,* 798 F.3d at 480. Accordingly, summary judgment is appropriate on plaintiff's Eighth Amendment claim.

---

[2] The court notes, again, that while it is unclear whether plaintiff attempts to hold defendants or any employees thereof responsible for the delay caused by the delivery of the breakfast tray, the court assumes he does and that those individual defendants have been properly named for purposes of this opinion, because it has no effect on the ultimate outcome.

### C. *Monell* Claim

Defendants also seek summary judgment on plaintiff's *Monell* claim, often referred to as a "pattern or practice" claim. Such a claim requires proof of a pattern or practice of constitutional deprivation in order to succeed. *See* 436 U.S. 658. Plaintiff devotes only three short sentences to defending this claim in his response brief, and he points to no evidence of a pattern of practice attributable to anyone, much less defendants. He has arguably waived this claim. *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Regardless, as defendants correctly point out, *Monell* liability cannot survive without an underlying constitutional violation by an individual defendant. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Jenkins v. Bartlett,* 487 F.3d 482, 492 (7th Cir. 2007). Because summary judgment is appropriate as to the Eighth and Fourteenth Amendment claims, as explained above, any *Monell* claim based on those claims also fails.

### D. State Law Medical Malpractice / Negligence Claim

Defendants also move for summary judgment on the ancillary state law claim for medical malpractice and/or negligence. To prevail in a medical malpractice action under Indiana law, a plaintiff must prove three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting

15

from that failure. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). A plaintiff seeking to recover for medical malpractice "is ordinarily required to present expert opinion that a defendant health care provider's conduct fell below the applicable standard of care." *Ho v. Frye,* 880 N.E.2d 1192, 1201 (Ind. 2008).

The only expert opinion in this case is from Dr. Paley, a board-certified orthopedic surgeon who opined that: "Mr. Perez received appropriate, timely and reasonable pre-operative, operative, and post-operative care for his metacarpal fracture that was commensurate with the standard of care, including reasonable and appropriate medication for pain control" and that "the pre-operative and post-operative management of Mr. Perez's medications by Correctional Health Indiana staff was appropriate and reasonable under the circumstances, including as to pain control." (Def. Ex. H ¶ 5.) Dr. Paley also noted that the "delay in the initial surgery had no bearing on the outcome of the surgical intervention Dr. Wood performed a mere six days later." (*Id.*)

Plaintiff does not contest or attempt to counter Dr. Paley's opinion. Rather, plaintiff points out that because his surgery occurred later than initially planned, his doctor had to perform an alternative, open procedure– not the closed procedure initially planned. This change in procedure is undisputed. (DE # 121 at 12, ¶¶ 50-52.) However, there is no evidence indicating that plaintiff's experience was any different during or after the second scheduled surgery than it would have been had the first scheduled surgery happened six days prior. Nor does plaintiff present evidence indicating that he

16

suffered while he waited. On the contrary, plaintiff admitted he was provided with daily pain relief during this period. (DE # 121 at 5, ¶ 25.) In sum, the court can discern no genuine issue of material fact regarding any breach of any duty of care, nor any harm, resulting from defendants' actions. Accordingly, summary judgment is appropriate on plaintiff's medical malpractice claim under Indiana law.

Plaintiff requests that the court decline to exercise ancillary jurisdiction over this state law claim so that plaintiff might proceed in state court against defendants, including the unnamed defendants. In the Seventh Circuit, there is a rebuttable presumption that the court will relinquish jurisdiction over state claims when federal claims are dismissed. *Williams Elec. Games, Inc., v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). However, this presumption may be overcome when the statute of limitations has run on the state law claims, substantial judicial resources have already been devoted which would result in duplicated effort in a state court, or when it is "absolutely clear" how the state law claims should be decided. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994).

In this instance, this case has been pending for five years and discovery has long been closed. (DE ## 2, 97.) Substantial resources have been devoted to resolving this case, including a settlement conference held by Magistrate Judge Martin. (DE # 110.) Further, as the court's above analysis reveals, this is not a close case; it is "absolutely clear" that plaintiff's case falls short of proving medical malpractice or any other claim. *Wright,* 29 F.3d at 1251; *see also Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir. 1994)

(district court properly retained jurisdiction over and dismissed "unspectacular" ancillary state law claim).

Further, plaintiff has been transparent that he seeks to proceed in state court in order to avoid the effects of Magistrate Judge Martin's denial of his motion to file a second amended complaint in this case to identify the unknown defendants. (DE # 120 at 6.) The principles of justice would not be served by allowing plaintiff an end-run around Magistrate Judge Martin's order. Regardless, the presumption against retaining jurisdiction has been overcome in this case, and the court denies plaintiff's request to relinquish jurisdiction over the ancillary state law medical malpractice claim.

### E.     Unidentified Defendants

Plaintiff's amended complaint names multiple "unknown" defendants, including "unknown employees of Correctional Health Indiana, Inc." (DE # 16.) As the court has repeatedly explained, Magistrate Judge Martin properly denied plaintiff's motion to file a second amended complaint to identify these defendants. (DE # 101.) The court will not reconsider this ruling, which Magistrate Judge Martin issued nearly a year ago, and to which no objections were filed.

The Seventh Circuit has noted that "initiating litigation against anonymous defendants is not inherently problematic," but "they must be named before the statute of limitations expires." *Hecke v. Unknown Agents of United States Drug Enf't Admin.*, No. 22-2314, 2022 WL 4353550, at *2 (7th Cir. Sept. 20, 2022). Plaintiff cannot dispute that the statute of limitations has long expired with respect to all claims in this case, which stem

18

from events occurring six years ago. (*See, e.g.*, DE # 107 14-15.) Accordingly, summary judgment is appropriate as to all claims against the "unknown" employees of Correctional Health Indiana, Inc.

IV.     **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment on all claims (DE # 106) is **GRANTED**. Dr. William Forgey, Correctional Health Indiana, Inc., and the "Unknown Employees of Correctional Health Indiana, Inc." are **TERMINATED** as defendants. Because this case remains pending against other defendants, the court temporarily withholds entry of final judgment.

                              **SO ORDERED.**

Date: September 29, 2023

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT